UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STEVEN RUBEOR,

                         Plaintiff,

   -against-                                       1:13-cv-0612 (LEK/CFH)

TOWN OF WRIGHT; TOWN BOARD
OF THE TOWN OF WRIGHT; AMBER
BLEAU, individually and as Town Board
member; ALEX LUNIESKI, individually
and as Town Board member; ED
THORNTON, individually and as Town
Board member; SUSAN CROSBY,
individually and as Town of Wright
Assessor,

                         Defendants.

_____

## **MEMORANDUM-DECISION and ORDER**

## **I.    INTRODUCTION**

Before the Court is Defendants Town of Wright; Town Board of the Town of Wright; Amber Bleau**;** Alex Lunieski; Ed Thornton; and Susan Crosby's (collectively, "Defendants") Motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), and attached Memorandum of law. Dkt. Nos. 7 ("Motion"); 7-1 ("Memorandum").[1] The Court abstains from exercising jurisdiction. The overriding issues in this litigation are ones of state law—whether, under New York Public Officials Law § 36, Plaintiff remained a public officer after the dissolution of an inter-municipality agreement, and whether New York law vested Plaintiff with a property right in his assessor position that survives that abstention.

---

[1] Defendants have also requested that the Court convert their Motion to a motion for summary judgment for the limited purpose of determining whether Plaintiff had a property right in his former position of assessor. See Dkt No. 17-6 ("Reply") at 2.

## II. BACKGROUND

### A. Facts[2]

The Town Board of the Town of Wright ("Town Board") appointed Plaintiff to the position of Assessor following the death of the previous assessor. Compl. ¶ 44, 45. The Town Board minutes from September 2, 2008 indicate that the Town Board hired Plaintiff as "ASSESSOR TO THE **TOWN OF WRIGHT**." Compl. Ex. B (emphasis added). However, Plaintiff's Oath of office states that Plaintiff would "faithfully discharge the duties of Town of Esperance, Wright, and Schoharie Assessor for CAP1,"[3] an inter-municipality-assessor-sharing agreement among neighboring towns ("CAP Agreement"). See Compl. ¶ 48-49; Ex. C. On December 10, 2010, the Town Board voted to withdraw from the CAP and appoint a new assessor to replace Plaintiff. See id. ¶¶ 48, 50. The Town Board appointed a new assessor shortly thereafter. Id. at 52.

### B. Procedural Posture

Plaintiff filed a complaint pursuant to New York Civil Procedure Law Rule § 7801 ("Article

---

[2] The Court defers decision on Defendant's request to convert their Motion to a motion for summary judgment. A court must convert a motion for judgment on the pleadings to a motion for summary judgment when it considers facts outside of the complaint that cannot be judicially noticed, or simply "makes a connection not established by the complaint alone." Friedl v. City of N.Y., 210 F.3d 79, 83-84 (2d Cir. 2000). Conversion should not be made when "significant relevant facts may yet be discovered." Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275, 278 (S.D.N.Y. 2006). Plaintiff's alleged property rights in his assessor position involve significant questions of state law. The Court cannot yet make a proper determination as to whether "significant relevant facts" may yet be discovered, and therefore decision on the request is deferred. The Court therefore accepts all of Plaintiff's factual allegations as true and resolves all factual inferences in his favor at this stage. In re Thelen, 736 F.3d 213, 218 (2d Cir. 2013).

[3] A "CAP," or Coordinated Assessment Program, is a device created by state statute to allow neighboring towns, or even an entire county, to hire a common property assessor. See N.Y. REAL PROP. TAX LAW § 579(2). Without a CAP in place, each local government must appoint its own assessor. Id. § 310(1).

78") in New York Supreme Court, seeking an annulment of his removal as assessor for the Town of Wright on the basis of Defendants' failure to comply with state law and the United States Constitution. See Dkt. No. 1-1 ("Complaint"). The Complaint further asserted claims for back pay and punitive damages under 42 U.S.C. § 1983, citing deprivation of Plaintiff's property rights without due process of law. Id. Defendants removed pursuant to 28 U.S.C. § 1441. Dkt. No. 1. Defendants then filed their Motion and Memorandum. Plaintiff responded, and Defendants replied. See Dkt. Nos. 12 ("Response"); Reply. The Reply requested that the Court consider Defendants' Motion as a motion for summary judgment to determine Plaintiff's property rights as assessor in order to reach Defendants' attached Declaration and five Exhibits. See Reply at 2; Dkt Nos. 17; 17-1–17-5.

## III. LEGAL STANDARD

### A. Property Rights in a 14th Amendment Due Process Claim

The Fourteenth Amendment provides, in relevant part, that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. "To plead a violation of procedural due process, a plaintiff must plausibly allege that he was deprived of property without constitutionally adequate pre- or post-deprivation process." J.S. v. T'Kach, 714 F.3d 99, 105 (2d Cir. 2013) citing Ahlers v. Rabinowitz, 684 F.3d 53, 62 (2d Cir. 2012)). "[A] plaintiff must 'first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process.'" Id. (quoting Local 342 v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994)) (second alteration in original).

A plaintiff's property interest in the employment context, or her right to continued employment, is granted by state law. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538

3

(1985). Once an interest has been established, federal constitutional law determines whether that interest is a property right carrying a "legitimate claim of entitlement" to merit due process prior to deprivation. Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). A "legitimate claim" is more than a "unilateral expectation"; it is a claim to something on which "people rely in their daily lives, reliance that must not be arbitrarily undermined." Id. A showing that an employee cannot be removed except for cause is sufficient to show entitlement to due process. Loudermill, 470 U.S. at 538-39. However, if an officer's removal is discretionary or incident to other functions, the plaintiff does not have a property right. See Schwartz v. Mayor's Comm. on Judiciary of City of N.Y., 816 F.2d 54, 56 (holding that a judge subject to discretionary reappointment need be afforded no process).

### B. Pullman Abstention

Federal courts may abstain from the exercise of jurisdiction when faced with a constitutional challenge to state law or state action. R.R. Comm'n v. Pullman Co., 312 U.S. 496, 498-501 (1941). In cases where a federal court is presented with both state and federal constitutional grounds for relief, the court may "abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 236 (1984). Three elements are required for abstention: (1) state law is undecided and unclear; (2) resolution of the federal constitutional issue depends on interpretation of state law; and (3) the law may be interpreted by a state court in a manner that avoids or modifies the constitutional issue. Vt. Right to Life Comm'n, Inc. v. Sorrell, 221 F.3d 376, 385 (2d Cir. 2000). The Second Circuit has held that courts have "a *sua sponte* obligation to consider [abstention] in the first instance" when the resolution of state law issues could obviate a

4

constitutional holding in a Loudermill claim. R.R. Vill. Ass'n, Inc. v. Denver Sewer Corp., 826 F.2d 1197, 1206-07 (2d Cir. 1987).

**IV. DISCUSSION**

This case involves the interactions of several state statutes and state caselaw, which together make unclear whether Plaintiff had a property right in his position post--CAP dissolution. In general, assessors are appointed to six-year fixed terms unless a town classifies the position of assessor in the "competitive" class. See N.Y. REAL PROP. LAW § 310(2); N.Y. CIV. SERV. LAW § 44. Assessors are public officers and therefore must be removed by a petition to the Appellate Division of the New York Supreme Court. See N.Y. PUB. OFF. LAW § 36; Salvator v. Ross, 876 N.Y.S.2d 754, 755-56 (N.Y. App. Div. 2009). This is the only procedure by which an officer appointed for a fixed term can be removed from office. See Enos v. Village of Seneca Falls, 288 N.Y.S.2d 785, 786-87 (N.Y. App. Div. 2001). Defendants do not argue that they complied with Public Officers Law § 36. They argue instead that the Town Board's legislative action destroyed the position held by Plaintiff, and therefore Plaintiff had no continuing property right in the office of asssessor. See Mem. at 4 (arguing that Defendants are entitled to legislative immunity because the vote to withdraw from the CAP Agreement ended Plaintiff's term as Assessor).

The critical state law issue in this case is whether Plaintiff's removal from the position of assessor required compliance with Public Officers Law § 36, or whether Real Property Tax Law § 579 allowed Plaintiff to remove Plaintiff incident to withdrawal from the CAP agreement, even though the removal did not coincide with the end of the six-year term. Section 579, subsection 4 allows participant towns in a CAP to withdraw from the agreement without regard to timing. See N.Y. REAL PROP. TAX LAW § 579. The New York Department of Taxation and Finance has

released an Opinion of Counsel ("Opinion") that recommends that, in the inverse situation also governed by Section 579(4)—where individual towns with serving assessors enter a CAP agreement—the CAP may truncate the six-year terms of the participant towns' previously appointed assessors. See N.Y. DEP'T OF TAXATION & FIN., Opinion of Counsel 10-35 (1997).[4] The Opinion reasoned that the state Legislature could not have intended for CAPs to be adopted only at the expiration of assessors' terms, and therefore truncation is necessary. Id. The Opinion also states that because the maximum term for individual CAP agreements is five years before renewal, and that the enactment of the CAP statute was more recent than the enactment of the six-year term for assessors, "statutory conflicts strongly suggest that the CAP program was intended to supersede the six-year term otherwise provided for by Section 310." Id.

However, even if the Court were to adopt the Opinion's reasoning, whether a similar mechanism should exist at the termination of a CAP agreement is unclear. At the formation of a new CAP, participant towns must narrow the pool of assessors from one per town to one for the entire agreement. At CAP termination, each town could continue to employ that assessor. See N.Y. REAL PROP. TAX LAW § 310(1) ("Any resident of the state, otherwise eligible for appointment as assessor, may be appointed assessor."). The language of Real Property Tax Law § 576 describes the assessor under the CAP to be "appointed to and hold the office of assessor in more than one city, town, village, or combination thereof." It is unclear if this language applies only during the CAP Agreement, or until the end of the normal six-year term.

Even if state law requires towns to continue to employ the CAP-agreement assessor until the

---

[4] Opinions of Counsel appear to carry no individual weight of authority. Cf. Miriam Osborn Mem'l Home Ass'n v. Assessor of City of Rye, 841 N.Y.S.2d 821 (N.Y. Sup. 2007).

end of her six-year term, the Court would need to address the secondary issue of whether state decisional law vests Plaintiff with a property interest. In Lanza v. Wagner, the New York Court of Appeals held that public-office appointees whose positions had been terminated by state statute retained no property interest under the New York State Constitution. 11 N.Y.2d 317, 324-24 (N.Y. 1962). The plaintiffs were former members of the New York City Board of Education ("Board") who had been duly appointed under state statute by the Mayor of New York ("Mayor"). Id. at 322. Citing poor conditions in the public school system that had "shaken public confidence, cause[d] great concern, and call[ed] for prompt corrective action," the Legislature amended the appointment process for the Board and called on the Mayor to nominate a new Board. Id. The plaintiffs were replaced. Id. They then sued, citing an interest in their position under the New York Constitution.[5] Id. The Court of Appeals held, "[a]bsent any express constitutional limitation, the Legislature has full and unquestionable power to abolish an office of its creation or to modify its term, or other incidents attending it, in the public interest, even though the effect may be to curtail an incumbent's unexpired term."[6] Id. at 324.

---

[5] In addition to the considerations below, it is also possible that the property interest for the purposes of a New York Constitution challenge and the property interest for the purposes of a U.S. Constitution challenge under the due process clause are different.

[6] Federal constitutional jurisprudence holds that denial of a right to political office by *state action* is not a violation of a constitutionally protected property right, even when removal is only "for cause." See Snowden v. Hughes, 321 U.S. 1, 7 (1944). Additionally, the Second Circuit has noted that the Supreme Court since Snowden "has adopted a more expansive approach to identifying 'property' within the meaning of the 14th Amendment," and that Snowden and its predecessors have only considered elected officials. See Velez v. Levy, 401 F.3d 75, 86-87 (2d Cir. 2005). If forced to decide the constitutional issue, the Court would have to determine whether this limitation on property interests applies to local government action dealing with an appointed official. See Stokes v. City of Mount Vernon, No. 11 CV 7675, 2012 WL 3536461, at *9 (S.D.N.Y. Aug. 14, 2012).

Interpreted broadly, Lanza holds that New York declines to grant any property rights in public officers. "Public offices are created for the benefit of the public, and not granted for the benefit of the incumbent, and the office holder has no contractual, vested or property right in the office." Id.; see also Long v. City of N.Y., 36 Sickels 425, 425 (N.Y. 1880) ("But however viewed, the act complained of was within the lawful exercise of power by the legislature, and within the principle frequently reiterated by the courts of this State, that a public office is not a grant, and that the right to it does not depend upon, or partake of the nature of, a contract."); Velez v. Levy, 274 F. Supp. 2d 444, 452 (S.D.N.Y. 2003) (interpreting Lanza broadly). The guarantees of a six-year term and removal under the provisions of Public Officers Law § 36 would provide no protection to the office holder; they would rather serve as a guarantee to the public that the assessor will be insulated from political pressures.[7] But see Cushnan v. Village of Ilion, 317 F. Supp. 2d 120, 123 (N.D.N.Y. 2004) (holding that § 36 of the Public Officers law, where it applies, provides a cognizable property right). Under a broad interpretation of Lanza, Plaintiff would have no property right and therefore no standing to assert a Due Process Clause challenge under § 1983. See Peel v. Crew, No. 96 CIV. 7154, 1996 WL 719378, at *11 (S.D.N.Y. 1996) ("But however viewed, the act complained of was within the lawful exercise of power by the legislature, and within the principle frequently reiterated by the courts of this State, that a public office is not a grant, and that the right to it does not depend upon, or partake of the nature of, a contract."). The federal constitutionality of this broad

---

[7] The facts of this case as alleged in the Complaint would, if true, undermine the propriety of this interpretation. Plaintiff articulates that the Town Board's decision to terminate the CAP may have been solely to remove Plaintiff from office. See Compl. ¶¶ 53-54. If standing to challenge the improper removal of an assessor rests only in individual residents of the town who may have little reason to expend the time and effort to file suit, then the rules for removing an assessor are of little consequence.

interpretation is questionable—indeed, the facts of this case would require the court to reconcile Roth and Loudermill with Snowden to determine whether Plaintiff's position is more akin to an employee with a reasonable expectation of employment, as the court held in Cushnan, or an elected official, as the court held in Peel.

However, it is possible to distinguish Lanza on the basis that the state legislature did not both create and eliminate the position that Plaintiff held, and therefore avoid the need to rule on its federal constitutionality. In Ocean Hill-Brownsville Governing Bd. v. Bd. of Ed. of City of N.Y., 23 N.Y.2d 483, 488 (N.Y. 1969), the Court of Appeals allowed the Board of Education discretion to suspend the local board because it had also created that local board. See id. However, the decision was made "in the absence of legislation giving this local board autonomy, a fixed term of office, or a tenure terminable only for cause," and thus "the board [was] subject entirely both as to its powers and term of office to its creating agency, the city Board of Education." Id. In this case, the Town of Wright was at all times required to appoint an assessor under the same overall statutory framework, in the context of a CAP or otherwise. Additionally, Lanza dealt with public education. According to that decision, boards of education "were created by the State for the purpose of carrying out a purely State function," the "administration of public education." Lanza, 11 N.Y.2d at 326; see also Woods v. Rondout Valley Cent. Sch. Bd. of Educ., 466 F.3d 232, 245-46 (2d Cir. 2006) (examining Lanza to determine whether a school board was immune from suit under the ADEA and § 1983). It is unclear whether property assessment is similarly situated to education, although assessment is at least related to the collection of property taxes, a state function. According to this interpretation, a plaintiff has no property right if the independent grant of state law that creates the plaintiff's position, and thus the right to hold it, is destroyed. Because the statutory scheme that provides

Plaintiff with his position has not been destroyed, the Court would not need to rule on the constitutionality of Lanza as it applies to this case.

There is also room for an intermediate interpretation based upon the above-quoted passage: that Plaintiff's property rights depend on whether the actual action that removed Plaintiff from office was legislative, and thus permissible, or executive, and thus improper because it is in contravention of Real Property Tax Law § 310 and Public Officers Law § 36. This interpretation views Real Property Tax Law § 576 as a delegation of power to municipalities, allowing them to create a common position of assessor in lieu of otherwise-statutorily-mandated individual assessors. This delegation would be similar to the one recognized in Ocean Hill-Brownsville, allowing the New York City Board of Education to create localized boards at its discretion, see 23 N.Y.2d at 220, except that this putative delegation would *replace* a statutory position rather than *supplement* it. Under this interpretation, the confluence of Real Property Tax Law §§ 310 and 576, and Public Officers Law § 36 is paramount. If a CAP is a legislative delegation, it is possible that the use of a CAP to appoint an assessor means that the CAP is the grant of the property right, and thus the termination of the CAP is the termination of the property right. However, if a CAP simply exists to give local governments greater freedom in the executive appointment of an assessor, than the statute would remain the grant of the property right and would not be affected by the termination of the CAP.

Where there is no property right under an independent grant of state law, there is no violation of due process. See Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999). Because it is unclear if state law would grant Plaintiff property rights in this action, the potential

resolution of those rights in the Article 78 proceeding may obviate a constitutional holding.[8] Thus, the second and third factors for Pullman abstention are met here. For the foregoing reasons, the Court has authority to abstain from exercising jurisdiction in this case.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Clerk of the Court **REMAND** Plaintiff's Article 78 claims to New York State Supreme Court, Schoharie County; and it is further

**ORDERED**, that Plaintiff's remaining § 1983 claims for deprivation of a property interest without due process of law are **STAYED pending the resolution of the state court action**; and it is further

**ORDERED**, that the Clerk of the Court mail a certified copy of this Memorandum-Decision and Order to the Clerk of New York State Supreme Court, Schoharie County, pursuant to 28 U.S.C. § 1447(c); and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

DATED:    February 18, 2014
          Albany, New York

Lawrence E. Kahn
U.S. District Judge

---

[8] Other federal courts have similarly abstained from exercising jurisdiction under the Pullman doctrine when difficult issues of state law would be decided in an Article 78 proceeding. Winters v. Lavine, 574 F.2d 46, 69 (2d Cir. 1978); Northeast Mines, Inc. v. Town of Smithtown, 584 F. Supp. 112, 115 (E.D.N.Y. 1984); Moe v. Dinkins, No. 80 Civ 1577, 1980 WL 19449, at *6 (S.D.N.Y. 1980); see also Coney Island Resorts, Inc. v. Giuliani, No 00 CV 2233, 2000 WL 804636, at *8 n.12 (E.D.N.Y. 2000).