UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STEVEN RUBEOR,

                              Plaintiff,

        -against-                                          1:13-CV-612 (LEK/CFH)

TOWN OF WRIGHT, *et al.*,

                              Defendants.

_____

**MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

        This case arises from plaintiff Steven Rubeor's removal from the position of assessor for

defendant Town of Wright (the "Town"). Dkt. No. 1-1 ("Complaint"). On May 29, 2013,

Defendants removed this action to the Northern District of New York pursuant to 28 U.S.C.

§ 1441, asserting federal question jurisdiction under 28 U.S.C. § 1331. Dkt. No. 1 ("Notice of

Removal") ¶ 5. Presently before the Court are the Town's motion for summary judgment, Dkt.

No. 47 ("Town Motion"); see also Dkt. No. 47-16 ("Town Memorandum"); Dkt. No. 47-17

("Town Statement of Material Facts"); Dkt. No. 54 ("Town Response"); Dkt. No. 55 ("Town

Responsive Statement of Material Facts"); Dkt. No. 57 ("Town Reply"),[1] and Rubeor's cross-

motion for partial summary judgment, Dkt. No. 48 ("Rubeor Motion"); see also Dkt. No. 48-1

("Rubeor Memorandum"); Dkt. No. 48-18 ("Rubeor Statement of Material Facts"); Dkt. No. 52

("Rubeor Response"); Dkt. No. 52-1 ("Rubeor Responsive Statement of Material Facts"); Dkt.

No. 58 ("Rubeor Reply"). Because a reasonable jury would have to conclude that Defendants'

_____

        [1]  While both the Town and the Town Board are the sole remaining defendants in this
action, Docket, only the Town moved for summary judgment and opposed Rubeor's cross-
motion, Town Mot; Town Resp.

removal of Rubeor from the assessor position violated his right to procedural due process, the Court grants his motion and denies the Town's motion.

## II.    BACKGROUND

### A.  Factual Background

In 1995, the Town established a coordinated assessment program ("CAP") with the towns of Schoharie and Esperance. Town SMF ¶ 1; Rubeor Responsive SMF ¶ 1. CAP agreements allow "[t]wo or more assessing units . . . within the same county or adjoining counties . . . [to appoint] a single assessor . . . to hold the office of assessor in all the participating assessing units." N.Y. Real Prop. Tax Law § 579(2)(b). New York law requires each town to appoint "one assessor," and "[t]he term of office of assessor shall be six years except as otherwise provided." Id. § 310(1)–(2). Assessors are "public officer[s] who ordinarily may only be removed from office for cause under Public Officers Law § 36. Rubeor v. Town of Wright (Rubeor II), 20 N.Y.S.3d 730, 732 (App. Div. 2015). In accordance with these statutes, the document formalizing the three towns' CAP agreement codified their decision "to provide for a single assessor to be appointed to hold the office of assessor in all aforesaid participating units." Dkt. No. 47-2 ("CAP Agreement") § II.

Rubeor has worked as an assessor for about twenty-five years. Town SMF ¶ 3; Rubeor Responsive SMF ¶ 3. On September 17, 2008, Rubeor became the CAP assessor for the Town, Schoharie, and Esperance; he was slated to fill "the remaining term of the previous assessor," which was to end in September 2013. Town SMF ¶ 5; Rubeor Responsive SMF ¶ 5. Schoharie was responsible for paying Rubeor for his services as CAP assessor, with the Town and

2

Esperance "contribut[ing] their portions directly to . . . Schoharie." Town SMF ¶¶ 7–8; Rubeor Responsive SMF ¶¶ 7–8.

Rubeor's term as CAP assessor was controversial in some quarters in the Town. Several residents of the Town "accused [Rubeor] of raising their assessments illegally," though Rubeor denies any wrongdoing. Dkt. No. 48-15 ("Rubeor Declaration") ¶ 11. Some of these residents were so upset with Rubeor's assessments that they "brought their concerns to the Town Board and the newspapers, and pressed the Town Board to initiate a lawsuit against [him]." Dkt. No. 52-11 ("Second Rubeor Declaration") ¶ 16. The Town Board authorized this lawsuit on November 5, 2012. Dkt. No. 52-8 ("November Meeting Minutes") at 1–3.

Around this time, Bill Goblet, the Town Supervisor and a member of the Town Board, "brought up the notion" of the Town's withdrawing from the CAP agreement. Town SMF ¶ 15; Rubeor Responsive SMF ¶ 15. Specifically, on October 11, 2012, a "CAP Meeting" was held at which Goblet "expressed a desire to get out of the CAP." Dkt. No. 48-13 ("Rubeor Deposition Part Two") at 125:5–7, 126:2–4, 127:10–12. Rubeor attended this meeting, id. at 126:8–9, and his understanding of the effect of the Town's withdrawing from the CAP agreement was that "[i]t wouldn't affect [him] as the CAP assessor. It wouldn't affect [him] as the Town of Wright's assessor. It's two separate things. It's very easy to get out of the CAP, but to fire your assessor you have to go through specific steps, and they did not do that," id. at 130:13–17. Rubeor was also aware of rumors that Goblet wanted to fire him. Dkt. No. 48-11 ("Rubeor Deposition") at 77:19–78:14.

On December 10, 2012, the Town held a Town Board meeting. Town SMF ¶ 16; Rubeor Responsive SMF ¶ 16. Rubeor arrived late to the meeting. Rubeor Dep. at 57:20–58:5. At the

3

meeting, the Town Board resolved, by two four-to-one votes, to withdraw from the CAP agreement and "authorize the appointment of an interim assessor to be chosen by the board at a later date." Dkt. No. 47-5 ("December 10 Meeting Minutes") at 3. "The interim period would be from [the] date of hire until September 2013 when all NYS Assessors are reappointed or appointed." Id. These votes had already been taken by the time Rubeor showed up. Rubeor Decl. ¶ 18. After Rubeor explained that he was "proceeding with data collection, and [that] all three towns w[ould] be completed 100% by [the] May 1st goal," Goblet told him that "the Board had voted and decided to remove the Town from the CAP so it will be one less town he has to worry about." Dec. 10 Meeting Minutes at 5. Rubeor "asked when this is effective and . . . Goblet explained this is effective today, December 10th." Id.

Before this meeting, Rubeor was aware that "the Town Board was considering withdrawing" from the CAP, but he did not know that the Town would withdraw from the CAP at the December 10 meeting. Rubeor Decl. ¶ 17. Nor did he realize that the Town would hire an interim assessor upon withdrawing from the CAP agreement. Id. ¶ 16. When Goblet told him the bad news, he "was shocked, and went basically speechless trying to process what just happened." Second Rubeor Decl. ¶ 9. And while Rubeor knew about the anger some residents felt at his assessment activities, he "was never informed by Town officials or Town Board members that defendants relied on th[e residents'] accusations as the basis for [his] removal." Rubeor Decl. ¶ 11. Rubeor also complains that the Town never gave him a chance to

> (a): explain that the Town's withdrawal from CAP 1 did not legally cut short [his] term of office as the Town's sole assessor; (b) show that the removal was illegal without evidence of "just cause" and the removal being done in conformance with applicable legal procedures;

> and (c) rebut whatever evidentiary basis the Town Board thought
> justified its decision to remove [him] as the Town's sole assessor.

Id. ¶ 15. Indeed, Rubeor never received "an explanation by a representative of the Town of Wright and/or the Town Board of the evidence justifying defendants' decision to replace [him] as the Town's sole assessor." Id. ¶ 10.[2]

Another Town Board meeting was held on December 17, 2012. Dkt. No. 47-6 ("December 17 Meeting Minutes"). At this meeting, the Town Board unanimously voted to "authorize Lynn Herzog, Town Clerk[,] to submit Local Law #1-2012, Withdrawing from the Coordinated Assessment Program." Id. at 1. The Town Board also agreed to "appoint Susan Crosby as the Interim Assessor for the period ending September 2013." Id. Two days later, on December 19, 2012, Goblet sent Rubeor a letter informing him that "the Town of Wright has decided to end its involvement with the CAP and [his] services are no longer needed. This decision was made at the last Town Board meeting and is effective December 10th based on Town of Wright, Local Law #1-2012." Dkt. No. 48-17 ("December Letter").

---

[2] The Town attempts to deny these statements by citing Defendants' responses to interrogatories sent by Rubeor. Town Responsive SMF ¶¶ 20–21, 23–24. But in these responses, Defendants simply deny that, among other things, they failed to inform Rubeor of their decision to remove him from the position of assessor before they made that determination, that they did not provide him with the reasons or evidence justifying his removal, and that they failed to give him an opportunity to be heard before he was replaced. Dkt. No. 48-9 ("Interrogatories Part Three") at 3–5; Dkt. No. 48-10 ("Interrogatories Part Four") at 3–4. The Town does not offer any admissible evidence supporting these blanket denials, which are therefore insufficient to create a genuine dispute of fact. See, e.g., Commer v. McEntee, No. 00-CV-7913, 2006 WL 3262494, at *9 (S.D.N.Y. Nov. 9, 2006) ("[B]lanket denials without reference to admissible evidence [are] insufficient to comply with the requirements of . . . [R]ule [56]." (collecting cases)). The Town does concede, however, that "the Town Board did not approve of any communications to [Rubeor] regarding his duties as Assessor prior to the withdrawal from the Coordinated Assessment Program." Interrogatories Part Four at 3.

After these events, Rubeor remained employed as the assessor for Schoharie and Esperance, Rubeor Dep. at 23:1–7, a position from which he retired on February 28, 2017, so that he could move to Florida to care for his elderly mother, Second Rubeor Decl. ¶¶ 33–34. But in the period between his removal as the assessor for the Town and February 2017, he unsuccessfully attempted to obtain additional work as an assessor. Town SMF ¶¶ 38–41; Rubeor Responsive SMF ¶¶ 38–41. Rubeor attributes his lack of success in this area to his removal as assessor for the Town, which "gave validity to the false accusations against [him]." Second Rubeor Decl. ¶ 18. According to Rubeor, by removing him while the "'cloud' of [allegedly] illegal misconduct hung over [him]," the Town "intensif[ied] the damage the taxpayers' false accusations caused to [his] professional reputation." Id. For example, in the summer of 2013, Middleburgh was considering appointing a new assessor, and Rubeor applied for the position. Dkt. No. 52-21 ("Makely Declaration") ¶¶ 6–7. Susan Makely, a member of Middleburgh's Town Board, supported Rubeor's application, but "other Town Board members [mentioned him] as someone they did not want to interview because of the fallout from the public uproar in . . . Wright that led to his removal as the Town's assessor." Id. ¶ 7. Makely was nonetheless able to convince the Middleburgh Town Board to interview Rubeor, but the board ended up deciding to retain the incumbent assessor. Id. ¶¶ 8–9.

Rubeor, a divorced, single father, claims that the removal has caused him significant psychological, physical, and financial harm, in addition to damaging his relationship with his daughter, over whom he has primary custody. E.g., Second Rubeor Decl. ¶¶ 11–13. The lost income forced Rubeor to "discontinue the cable TV subscription at [his] house, and to stop going out with [his] daughter for breakfast, ice-cream, bowling, and movies." Id. ¶ 12. These changes

contributed to Rubeor's sense of "inadequa[cy] as a father" and to his depression and anxiety, for which he "had already been going to therapy" at the time of the removal. Id. ¶ 13. Rubeor's money problems also affected his social life, which had previously revolved around lunches at "local eateries in Schoharie County." Id. ¶ 14. Rubeor no longer felt comfortable lunching at these establishments, because his "budget was so tight that [he] could not even afford a cup of coffee with [his] friends if [he] went in." Id. Moreover, for several months after the removal, Rubeor got only four to five hours of sleep a night, and he claims his difficulty falling asleep stemmed from his worries about the issues just described. Id. ¶ 21. Rubeor also began to experience "gastrointestinal issues" for the first time in the aftermath of the removal, and he "would [often] rush to the bathroom . . . because [he] was experiencing symptoms of diarrhea." Id. ¶ 22.

**B.  Procedural History**

Rubeor began this action by filing a petition in New York State Supreme Court, Schoharie County on April 19, 2013. Compl. According to Rubeor, the decision to remove him was arbitrary and capricious under Article 78, and it violated his right to procedural due process under the Fourteenth Amendment. Id. ¶¶ 2–3. The petition sought, among other things, "annulment of [Defendants'] determination to remove Mr. Rubeor from office, his reinstatement, and an award of lost wages [and] compensatory damages." Id. ¶ 4. Defendants then removed the case to the Northern District of New York under § 1441. Notice of Removal.

After Defendants moved for judgment on the pleadings, Dkt. No. 7 ("Motion for Judgment on the Pleadings"), the Court abstained from exercising jurisdiction over the case under Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941), Rubeor v. Town of

Wright (Rubeor I), No. 13-CV-612, 2014 WL 636323, at *5 (N.D.N.Y. Feb. 18, 2014) (Kahn,

J.). Pullman abstention permits federal courts to decline jurisdiction when "(1) an unclear state

statute is at issue; (2) resolution of the federal constitutional issue depends on the interpretation

of the state law; and (3) the law is susceptible 'to an interpretation by a state court that would

avoid or modify the federal constitutional issue.'" Vt. Right to Life Comm., Inc. v. Sorrell, 221

F.3d 376, 385 (2d Cir. 2000) (quoting Greater N.Y. Metro. Food Council v. McGuire, 6 F.3d 75,

77 (2d Cir. 1993)). The Court noted that Rubeor's procedural due process claim depended on

whether he retained a protected property interest in his position as assessor for the Town after its

withdrawal from the CAP agreement. Rubeor I, 2014 WL 636323, at *2–3. That, in turn, hinged

on whether Rubeor's

> removal from the position of assessor required compliance with
> Public Officers Law § 36, [which provides for-cause protections and
> requires those seeking removal to file a petition with the Appellate
> Division,] or whether Real Property Tax Law § 579 allowed
> [Defendants] to remove [Rubeor] incident to withdrawal from the
> CAP agreement, even though the removal did not coincide with the
> end of the six-year term.

Id. at *3. The Court then found Pullman abstention appropriate because "the potential resolution

of . . . [Rubeor's property right in his assessor position] may obviate a constitutional holding." Id.

at *5. Accordingly, the Article 78 claims were remanded to New York State Supreme Court,

Schoharie County, and Rubeor's procedural due process claim was stayed pending resolution of

the state court action. Id.

On October 2, 2014, Acting Supreme Court Justice Gerald W. Connolly held that

Defendants' "determination removing [Rubeor] from his office as assessor was in error of law."

Dkt. No. 47-14 ("Supreme Court Decision") at 6. Justice Connolly noted that New York Real

Property Tax Law section 579 "contains no express provision that permits the appointment of a new assessor, separate and apart from the assessor that was appointed as part of the CAP, prior to the expiration of such assessor's 6-year term as set forth in RPTL § 310." Id. And he found that "nothing in RPTL § 579 provides that withdrawal from a CAP truncates the term of an assessor as set forth in RPTL § 310." Id. Further, Justice Connolly noted that while "[i]t is axiomatic that the Legislature may abolish or shorten the term of positions which it has created," id. at 8 (quoting Ball v. State, 363 N.E.2d 323, 325 (N.Y. 1977)), that was not the case here, because "the Legislature [did not] abolish[] [Rubeor's] office, but, rather, . . . [the] Town withdrew from a CAP and appointed another individual as its Town Assessor," id. Thus, since Rubeor was not removed in accordance with the procedures set forth in New York Public Officers Law section 36, the removal "was affected by an error of law." Id.

The Appellate Division affirmed Justice Connolly's decision on December 3, 2015, holding that Rubeor's "term of office did not end when the Town withdrew from the CAP and that [he] held a right to continued employment until the expiration of his term." Rubeor II, 20 N.Y.S.3d at 733. The court stated that the Town was "required to appoint an assessor, whose term of office shall be six years, and that an assessor is a public officer who ordinarily may only be removed for cause under Public Officers Law § 36." Id. at 732 (citation omitted). The court then framed the question as "whether a CAP changes this structure" by truncating an assessor's term when "a CAP member opts to withdraw prior to the expiration of the term." Id. After reviewing what it considered to be "competing provisions" in the statute, the court concluded that "the Legislature intended an assessor's six-year term to remain intact, even when a CAP member opts to withdraw." Id. The court elaborated: "Insofar as the assessor is concerned, the

effect of withdrawal is merely delayed until the assessor's term expires, at which time the assessing unit is free to choose a new assessor, without approval from any other assessing unit." Id.

On March 29, 2016, the New York Court of Appeals denied Defendants' motion for leave to appeal, Rubeor v. Town of Wright (Rubeor III), 51 N.E.3d 564 (N.Y. 2016), and on April 7, 2016, this Court granted Rubeor's request to lift the stay on his procedural due process claim and to reinstate Defendants' Motion for Judgment on the Pleadings, Dkt. No. 34 ("April Order"). Then, on June 8, 2016, the Court granted in part Defendants' Motion for Judgment on the Pleadings, dismissing the individual Town Board defendants from the case based on their entitlement to qualified immunity, and terminating Susan Crosby, Rubeor's replacement as assessor, from the action. Rubeor v. Town of Wright (Rubeor IV), 191 F. Supp. 3d 198, 207–08 (N.D.N.Y. 2016) (Kahn, J.). With respect to the Town Board defendants, the Court noted that Rubeor's "Complaint raised complicated and unresolved issues of state law—issues that clearly were not placed beyond debate by existing precedent—such that a reasonable official could have believed that Defendants were not violating the law by removing [Rubeor] from his office." Id. at 207. That entitled the individual defendants to qualified immunity, but because "it is well settled that municipal entities are not entitled to qualified immunity from [42 U.S.C.] § 1983 liability," the Court declined to extend qualified immunity to the Town or the Town Board itself. Id. Thus, the Town and the Town Board are the only remaining defendants in this action.

In late December 2016—before the parties moved for summary judgment—Defendants' counsel sent Rubeor's lawyer a check for $4,044 made out to Rubeor. Dkt. No. 52-5 ("December Emails"); Dkt. No. 52-4 ("Check"). Attached to the check was a letter written by Defendants'

counsel, who explained that the check was offered "in connection with the remaining period of

the term Mr. Rubeor was previously serving (i.e. from January 1, 2013 – September 30, 2013)."

Dkt. No. 47-11 ("Check Letters") at 2.[3] Rubeor's counsel expressed his surprise at receiving the

check in an email to Defendants' lawyer, who responded that the check was intended as

"payment for the remaining period of [Rubeor's] term in assessing properties for the Town of

Wright." Dec. Emails. On January 6, 2017, Rubeor's counsel formally responded to the letter by

writing a letter of his own, which noted that while Rubeor was "taking steps to deposit the

check," "[n]either the check nor its cover letter indicate anywhere that the check is a 'payment in

full,' and both fail to otherwise reflect indicia that Defendants seek to affect [sic] a satisfaction,

release, or discharge of [Rubeor's] dispute with and/or cause of action against defendants."

Check Letters at 4. Rubeor's lawyer also highlighted Rubeor's view that "the check amount is

less than the actual amount of back pay owed to [Rubeor]," and that it did not purport to "cover

other categories of damages [Rubeor] has sought through this action, including . . . compensatory

damages and attorneys' fees." Id.[4] Rubeor endorsed the check "with reservation of rights and

under protest." Check.

---

[3] The page numbers for this document refer to those generated by the Court's electronic filing system ("ECF").

[4] Rubeor acknowledges that $4,044 represents the amount his "salary decreased as a direct result of [his] removal from office." Second Rubeor Decl. ¶ 4. But he believes his back pay should be measured by reference to the salary received by his replacement over the remainder of his term, which he believes to be about $11,250. Id. ¶¶ 4–6. The Town argues that Rubeor "is not entitled to the payments the Town made to the interim assessor as had the Town not chosen to withdraw from the CAP, [he] would have received an amount similar to his 2012 salary." Town Reply at 7.

In January 2017, Rubeor and the Town moved for summary judgment. Rubeor Mot.; Town Mot. The Town argues that Rubeor's failure to name Goblet as a defendant in this action dooms his procedural due process claim. Town Mem. at 5–7. Relatedly, the Town suggests that because Goblet was the only party "who took any direct action regarding the termination of [Rubeor's] assessment duties for the Town," the Town cannot be held liable under § 1983 as a municipality. Id. at 7–9. The Town's position is that the only relevant action it took was withdrawing from the CAP, which the Appellate Division "confirmed was a legitimate exercise of its legislative powers." Id. at 8. The Town further argues that Rubeor's claims for damages must be dismissed because it has already "paid [him] all back pay for the period of time remaining on his term of office after Bill Goblet (not the Town) directed [him] that his services were no longer needed." Id. at 10. Finally, the Town suggests that Rubeor received all the due process to which he was entitled "during the Article 78 proceeding he commenced," id. at 11, and that in any event Rubeor was not deprived of any property interest because Defendants merely abolished the position of CAP assessor, id. at 12–14.

Rubeor argues that he is entitled to summary judgment as to liability because Defendants deprived him of his property interest in continued employment as assessor for the Town without providing him the pretermination process to which he was entitled under the Fourteenth Amendment. Rubeor Mem. at 10–16. Rubeor claims that municipal liability is appropriate here on account of "the Town Board's resolutions that withdrew the Town of Wright from CAP 1 and replaced Rubeor as the sole assessor to the Town." Id. at 17. According to Rubeor, the only triable issue remaining in this case is "the full extent of his damages recoverable on [his § 1983] claim." Id. at 2.

12

### III.   LEGAL STANDARD

#### A.  Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party carries the ultimate burden of proof and has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods.,

Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

### B. Subject Matter Jurisdiction

Subject matter jurisdiction is a fundamental predicate to judgment in the federal courts. "Dismissal of a case for lack of subject matter jurisdiction . . . is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'" Ford v. D.C. 37 Union Local 1549, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). A lack of subject matter jurisdiction cannot be waived, and may be raised by motion or sua sponte at any time. E.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 107 (2d Cir. 1997); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The party asserting subject matter jurisdiction prove its existence by a preponderance of the evidence. E.g., Makarova, 201 F.3d at 113; Augienello v. FDIC, 310 F. Supp. 2d 582, 587–88 (S.D.N.Y. 2004).

## IV.   DISCUSSION

### A. The $4,044 Check

The Town argues that Rubeor's decision to cash the $4,044 check it sent him means he "has obtained all relief to which he is due." Town Reply at 8. Thus, "the remainder of his Complaint must be dismissed." Id. The Court addresses this argument first because it implicates the Court's subject matter jurisdiction. See, e.g., United States v. Bond, 762 F.3d 255, 263 (2d

Cir. 2014) ("Subject matter jurisdiction is a 'threshold question that must be resolved . . . before proceeding to the merits.'" (alteration in original) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88–89 (1998))); see also Nypl v. JPMorgan Chase & Co., No. 15-CV-9300, 2017 WL 1133446, at *2 (S.D.N.Y. Mar. 24, 2017) ("The arguments concerning subject matter jurisdiction are addressed first.").

"A case is moot pursuant to Article III's Case or Controversy requirement when 'it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" H.I.S. Juveniles, Inc. v. Tokio Marine Specialty Ins. Co., No. 15-CV-1367, 2015 WL 3404202, at *2 (S.D.N.Y. May 27, 2015) (quoting Tanasi v. New All. Bank, 786 F.3d 195, 199 (2d Cir. 2015)). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1528 (2013) (quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477–78 (1990)). But "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." Bellino v. JPMorgan Chase Bank, N.A., No. 14-CV-3139, 2015 WL 4006242, at *2 (S.D.N.Y. June 29, 2015) (quoting Knox v. Serv. Emps. Int'l Union, Local 1000, 567 U.S. 298, 307–08 (2012)).

Under Federal Rule of Civil Procedure 68(a), "[a]t least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." And "[i]f, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment." Id. "If the offeree does not accept the offer of judgment, it is 'considered withdrawn,'" Cortes v. Mako

Sec., Inc., No. 15-CV-281, 2017 WL 2333625, at *1 (E.D.N.Y. May 30, 2017) (quoting Fed. R. Civ. P. 68(b)), and "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made," Fed. R. Civ. P. 68(d).

In accordance with this procedure, "after judgment is entered [under Rule 68 and a plaintiff's claims have been fully satisfied], the plaintiff's individual claims will become moot for purposes of Article III." Tanasi, 786 F.3d at 200. But "an unaccepted Rule 68 offer of judgment, on its own, will not moot a plaintiff's claims." Bank v. All. Health Networks, LLC, 669 F. App'x 584, 585 (2d Cir. 2016) (citing Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 670 (2016)). And it is well settled that "to moot a plaintiff's claim, the defendant must make an offer of judgment; an offer of settlement is insufficient." Jones-Bartley v. McCabe, Weisberg & Conway, P.C., 59 F. Supp. 3d 617, 631 (S.D.N.Y. 2014); accord Fernandez v. Peter J. Craig & Assocs., P.C., 985 F. Supp. 2d 363, 369 (E.D.N.Y. 2013) ("[A]n offer of settlement that does not provide for the entry of judgment is not the equivalent of a Rule 68 offer of judgment and is not treated as such." (citing Cabala v. Crowley, 736 F.3d 226, 229–31 (2d Cir. 2013))). Further, "the offer of judgment must fully satisfy the plaintiff's claim; a genuine dispute over whether the offer satisfies the entirety of the claim may, by itself, constitute a live case or controversy." Id.; accord Hrivnak v. NCO Portfolio Mgmt., Inc., 719 F.3d 564, 567 (6th Cir. 2013) ("An offer limited to the relief the defendant believes is appropriate does not suffice. The question is whether the defendant is willing to meet the plaintiff on his terms.").

There are two problems with the Town's argument that the payment to Rubeor mandates dismissal of his claim. First, there is no evidence that Defendants ever made a Rule 68 offer to

Rubeor. Indeed, the letter accompanying the check contains no reference to Rule 68, the entry of judgment against any defendants, or even the possibility of settlement. The letter states merely that the check is offered "in connection with the remaining period of the term Mr. Rubeor was previously serving (i.e. from January 1, 2013 – September 30, 2013)." Check Letters at 2. Since neither this letter nor the email later sent by Defendants' counsel to Rubeor's lawyer even hints at the possibility of a Rule 68 offer, Rubeor's decision to cash the check does not moot his claim. See, e.g., Fernandez, 985 F. Supp. 2d at 370 (finding that a Rule 68 offer did not moot a plaintiff's claim "because it did not provide for the entry of judgment against defendant"); Mendoza v. Regis Corp., No. 01-CV-0937, 2006 WL 1881526, at *3 (W.D. Tex. July 6, 2006) ("A close examination of the March 29, 2005 letter reveals that it is not a Rule 68 Offer of Judgment. The letter fails to include any reference to Rule 68. . . . Accordingly, defendants cannot now claim any of the benefits of the Rule."); EEOC v. Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO, No. 94-CV-1022, 1996 WL 663971, at *5 (N.D.N.Y. Nov. 12, 1996) (finding a purported Rule 68 offer to be invalid because "the settlement offer [wa]s vague inasmuch as it ma[de] absolutely no reference to Rule 68").

Second, although Rubeor cashed the check, his lawyer made it clear that Rubeor did not view $4,044 as adequate compensation for his injuries. Check Letters at 4. Indeed, Rubeor continues to assert that he is owed more than that amount both for his back pay and for other damages resulting from his removal as assessor for the Town. Second Rubeor Decl. ¶¶ 6–8. Rubeor's position that Defendants have yet to provide him complete relief means that there is still a live controversy between them. See Chavez v. Hat World, Inc., No. 12-CV-5563, 2012 WL 6138824, at *4 (N.D. Ill. Dec. 11, 2012) ("[T]he record does not establish that Chavez and

17

Johnson have received complete relief, so as to destroy their interest in the case. They maintain

that Hat World still owes them money, and it is not clear to the court that the amount tendered

fully satisfied their claims. . . . In other words, there is still a live controversy before the court.").

The Town naturally disputes Rubeor's damages calculations, Town Reply at 7, but even if the

Town turns out to be correct about the amount it owes, that is simply irrelevant to the question

whether Rubeor's claim was made moot by his decision to cash the check, see Kaye v. Amicus

Mediation & Arbitration Grp., Inc., 300 F.R.D. 67, 75 (D. Conn. 2014) ("However reasonable

the Offer was or proves to have been, the disparity between its terms and the individual recovery

sought by plaintiffs precludes a finding of mootness."). Accordingly, because the Court retains

subject matter jurisdiction over this case, it now turns to the merits.

### B. Procedural Due Process

The procedural component of the Due Process Clause prevents the deprivation of a

protected interest absent the provision of sufficient procedural protections. Courts evaluate

procedural due process claims using a two-prong test: "(1) whether plaintiffs possessed a

protected liberty or property interest, and, if so, (2) what process plaintiffs were due before they

could be deprived of that interest." Adams v. Suozzi, 517 F.3d 124, 127 (2d Cir. 2008) (quoting

Sealed v. Sealed, 332 F.3d 51, 55 (2d Cir. 2003)); see also Zinermon v. Burch, 494 U.S. 113, 126

(1990) ("[T]o determine whether a constitutional violation has occurred, it is necessary to ask

what process the State provided, and whether it was constitutionally adequate.").

"Property interests are not created by the Constitution, but instead, are created and

defined by existing rules or understandings 'stemming from an independent source,' which

source supports a 'legitimate claim of entitlement.'" Barnes v. Pilgrim Psychiatric Ctr., 860 F.

18

Supp. 2d 194, 201 (E.D.N.Y. 2012) (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)). Courts "look[] to state law to determine the source of a Constitutionally protected property right." Id. "Once such a property right is found, [a court] must determine whether that property right 'constitutes a property interest for purposes of the Fourteenth Amendment.'" O'Connor v. Pierson, 426 F.3d 187, 196 (2d Cir. 2005) (quoting Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005)). If the court determines that the property right qualifies for protection under the Fourteenth Amendment, "[t]he second step of the analysis . . . asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review." Narumanchi v. Bd. of Trs. of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988) (citing Mathews v. Eldridge, 424 U.S. 319 (1976)).

   1.   *Property Interest*

   "A public employee who has a right not to be fired without 'just cause' . . . has 'a property interest in h[er] employment that qualifie[s] for the protections of procedural due process.'" Otero v. Bridgeport Hous. Auth., 297 F.3d 142, 151 (2d Cir. 2002) (second and third alterations in original) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)); see also Farrish v. Town of East Hartford, 2 F. App'x 110, 111 (2d Cir. 2001) ("A property interest may be created by a state-law provision that the employee may not be fired except for cause."); DeMichele v. Greenburgh Cent. Sch. Dist. No. 7, 167 F.3d 784, 789 (2d Cir. 1999) ("It is well-settled that DeMichele, as a public employee who can be discharged only for cause, had a constitutionally protected property interest in his tenure and could not be fired without due process."); S & D Maint. Co. v. Goldin, 844 F.2d 962, 967 (2d Cir. 1988) ("In the

employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship *without cause*.").

There is no question that Rubeor maintained a property interest in his position as assessor for the Town after the Town withdrew from the CAP agreement. As the Appellate Division noted, "the Town is required to appoint an assessor, whose term of office shall be six years." Rubeor II, 20 N.Y.S.3d at 732. And "an assessor is a public officer who ordinarily may only be removed from office for cause under Public Officers Law § 36." Id. New York Public Officers Law section 36 states that a public officer "may be removed from office by the supreme court for any misconduct, maladministration, malfeasance or malversation in office." The Second Circuit has indicated [that these grounds] are equivalent to just cause." Cushman v. Village of Ilion, 317 F. Supp. 2d 120, 123 (N.D.N.Y. 2004) (citing Rubino v. City of Mount Vernon, 707 F.2d 53, 54 (2d Cir. 1983)). Further, the Appellate Division held that the Town's withdrawal from the CAP did not truncate Rubeor's term of office, and that therefore he "held a right to continued employment until the expiration of his term." Rubeor II, 20 N.Y.S.3d at 732–33. Since Rubeor maintained the for-cause protections afforded him as a public officer even after the Town withdrew from the CAP agreement, he had a "property interest in [his] employment and [could] not be discharged without due process." Yang v. N.Y.C. Transit Auth., No. 01-CV-3933, 2002 WL 576079, at *3 (E.D.N.Y. Apr. 16, 2002).[5]

The Town offers three arguments for concluding that Rubeor did not maintain a property interest in his position after the Town's withdrawal. First, the Town says it "bears significance

---

[5] Indeed, the Court reached the same conclusion in Rubeor IV, holding that "[Rubeor] had a protected property interest in his position as assessor for the Town of Wright and [he] was entitled to due process of law." 191 F. Supp. 3d at 206.

that although the State Courts were continually asked to determine if [Rubeor] had a property interest, neither the Supreme Court nor the Appellate Division ever stated that he had such a right." Town Mem. at 13. This argument is meritless. For one thing, this Court remanded only Rubeor's Article 78 claims to the New York State Supreme Court. Rubeor I, 2014 WL 636323, at *5. And the Court stated that Rubeor's "§ 1983 claims for deprivation of a property interest without due process of law" would be stayed while the Article 78 claims were addressed in state court. Id.[6] Resolution of the Article 78 claims did not depend on whether Rubeor held a property interest protected by the Fourteenth Amendment. Instead, the question was purely one of state law. As the Appellate Division put it, "[t]he question presented is whether a CAP changes th[e] structure [governing the appointment and tenure of assessors]." Rubeor II, 20 N.Y.S.3d at 732. More important, as just discussed, there can be no question that Rubeor maintained a protected property interest in his position after the withdrawal from the CAP agreement, so the state courts' silence on this issue simply does not sway the Court one way or the other.

The Town also argues that once Defendants abolished the position of "CAP 1 Assessor" altogether by withdrawing from the CAP agreement, Rubeor lost any property interest he had held in that position. Town Mem. at 14. It is true that "a state may decide to make its operations more efficient by abolishing or consolidating positions, and need not routinely provide hearings for employees whose positions are targeted for elimination whenever the state adopts such efficiency measures." Knox v. Town of Southeast, No. 11-CV-8763, 2014 WL 1285654, at *6

---

[6]  In accordance with this Court's clear instructions, Justice Connolly "note[d] that [Rubeor's] due process and 42 U.S.C. § 1983 claims have been stayed and will be addressed in Federal district court and accordingly, are not being reviewed in this state court Article 78 proceeding." Supreme Ct. Decision at 8.

(S.D.N.Y. Mar. 31, 2014) (citing Dwyer v. Regan, 777 F.2d 825, 833 (2d Cir. 1985)), aff'd, 599

F. App'x 411 (2d Cir. 2015). "Instead, a pretermination hearing is required only when, first, the

employee alleges that the reduction in force was pretextual and second, the employee

demonstrates that she timely requested a pretermination hearing." Perkowski v. Stratford Bd. of

Educ., 455 F. Supp. 2d 91, 95 (D. Conn. 2006).

      But this exception does not apply to Rubeor's termination because the Town did not

eliminate his position. Under New York Real Property Tax Law section 579(2)(b), towns that

enter into a CAP agreement appoint "a single assessor . . . to hold the office of assessor in all the

participating assessing units." And each town is allowed to have only one assessor. Id. § 310(1).

In line with these statutory provisions, the document formalizing the Town's CAP agreement

with Schoharie and Esperance "provide[d] for a single assessor to be appointed to hold the office

of assessor in all aforesaid participating units." CAP Agreement § II. When the Town withdrew

from the CAP agreement, then, it did not abolish the position of assessor. Indeed, it could not do

so in light of the doctrine of "[l]egislative equivalency[,] which requires that a position created by

a legislative act can only be abolished by a correlative legislative act." Torre v. County of

Nassau, 657 N.E.2d 486, 488 (N.Y. 1995). Since the New York State Legislature created the

assessor position held by Rubeor, the Town could not legally abolish it. See, e.g., Sheedy v.

Pataki, 663 N.Y.S.2d 934, 936 (App. Div. 1997) ("[T]he Legislature created the SEO and the

office of its Commissioner, and it is undisputed that only the Legislature could abolish that office

or position."). In any event, the record is clear that Defendants did not even try to eliminate the

position; instead, they simply hired Susan Crosby to fill Rubeor's unexpired term as the Town's

assessor. Dec. 10 Meeting Minutes at 3; Dec. 17 Meeting Minutes at 1. The Appellate Division

recognized this when it stated that Rubeor was trying to "annul a determination of respondent Town Board of the Town of Wright to remove petitioner from *the office of Assessor of the Town of Wright*." Rubeor II, 20 N.Y.S.3d at 731 (emphasis added). Thus, the Dwyer exception is inapplicable to this case.

Finally, the Town suggests that because Rubeor "was provided with adequate compensation" in the form of the check for $4,044, he cannot be said to have been deprived of a protected property interest. Town Reply at 10. The Town points to Second Circuit precedent recognizing that "a public employee who is suspended with full pay and benefits[] is not deprived of a protected property interest because there is no cognizable property interest in merely doing one's job." Gugliotti v. Miron, No. 08-CV-442, 2010 WL 3025223, at *7 (D. Conn. July 30, 2010) (citing O'Connor, 426 F.3d at 199). The Town appears to suggest that this rule applies to Rubeor, Town Resp. at 6, but that is plainly incorrect. Rubeor was not suspended with full pay and benefits; he was terminated, and as a result of his termination, he lost all of the income he used to receive from his position as assessor for the Town. It is true that, about four years *after* Rubeor's termination, Defendants wrote him a check for $4,044. But that does not mean that Rubeor "has at all times maintained [his] full normal salary." MacFall v. City of Rochester, 495 F. App'x 158, 160 (2d Cir. 2012). This argument is therefore unavailing.

### 2. *What Process Was Due, and Did Rubeor Receive It?*

"When a tenured public employee such as [Rubeor] is terminated, procedural due process requires 'notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards.'" Baker v. Schriro, No. 10-CV-4227, 2011 WL 6026237, at *3 (E.D.N.Y. Dec. 2, 2011) (quoting Locurto v. Safir, 264 F.3d 154, 171 (2d Cir.

23

2001)). "The pre-termination process required 'need not be elaborate' so long as the employee receives (1) oral or written notice of the charges against her; (2) an explanation of the employer's evidence; and (3) an opportunity to present her side of the story." Id. (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545–46 (1985)). "As long as . . . Defendants complied with the[se] minimal due process requirements for a pre-termination hearing, the Article 78 proceeding is a 'wholly adequate post-deprivation remedy.'" Reed v. Medford Fire Dep't, Inc., 806 F. Supp. 2d 594, 617 (E.D.N.Y. 2011) (quoting Locurto, 264 F.3d at 175). Where, as here, such a postdeprivation remedy is available, "the requisite [pretermination] hearing is a minimal one [that] does not purport to resolve the propriety of the discharge, but serves mainly as a check against a mistake being made by ensuring there are reasonable grounds to find the charges against an employee are true and would support his termination." Id. at 612 (alterations in original) (quoting Locurto, 264 F.3d at 173–74).

Here, Defendants did not provide Rubeor with adequate process before he was terminated. It is undisputed that before Rubeor arrived late to the December 10, 2012 meeting and learned that the Town had withdrawn from the CAP agreement and authorized the appointment of his successor, Defendants did not tell him they were considering firing him.[7] As Rubeor puts it, he "first learned from defendants [that he] was to be replaced as the sole assessor to the Town upon the Town's withdrawal from CAP 1 . . . after the Town Board passed the

---

[7]  Rubeor testified at his deposition that there were "rumors" that Goblet wanted to fire him. Rubeor Dep. at 77:19–78:14. The Town does not suggest that Rubeor's awareness of such rumors provided him with constitutionally adequate pretermination process. Moreover, Rubeor said that he did not think he heard about Goblet's desire to fire him from Goblet himself, and there is no indication that he learned about it from other members of the Town Board. Id. at 78:4–6, 80:6–16.

December 10, 2012 resolutions." Rubeor Decl. ¶ 16. Rubeor did know that many residents of the

Town were upset with his assessment activities, id. ¶ 11, and he was aware that the Town was

considering withdrawing from the CAP agreement, id. ¶ 17. But his understanding was that

withdrawal "wouldn't affect [him] as the CAP assessor" because "it's very easy get out of the

CAP, but to fire your assessor you have to go through specific steps, and they did not do that."

Rubeor Dep. Part Two at 130:13–17. Rubeor was, of course, right about this. Rubeor II, 20

N.Y.S.3d at 732–33. And in any case, Rubeor's awareness that the Town was contemplating

withdrawal and that anger was boiling up among Town residents could not substitute for

constitutionally adequate notice. See Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-

Southeast Joint Fire Dist., 178 F. Supp. 3d 118, 132, 145 (S.D.N.Y. 2016) (noting that a

reasonable jury could not conclude that the defendants provided adequate notice where, "[a]part

from [one] conversation with [a mechanic] . . . [the plaintiff] was never informed that he may be

removed from the Department before receiving notification of his expulsion").

　　　Nor did Defendants provide Rubeor with an explanation of the evidence they relied on to

terminate him. Rubeor's undisputed testimony is that before the December 10 meeting, he was

not given "an explanation by a representative of the Town of Wright and/or the Town Board of

the evidence justifying defendants' decision to replace [him] as the Town's sole assessor."

Rubeor Decl. ¶ 10. Again, while Rubeor knew generally that the certain Town residents believed

he was illegally raising assessments, Defendants never explained the evidence they thought

justified his removal. Defendants later stated in response to an interrogatory that, "[u]pon

information and belief," they decided to end their relationship with Rubeor because they were

"concerned generally about equitable assessments within the municipalities of the CAP, and

specifically real property assessments in the Town of Wright." Dkt. No. 48-3 ("Interrogatories") at 7. But, to repeat, there is no dispute that Defendants did not share these concerns (and the evidence supporting them) with Rubeor before he learned that he had been replaced. In fact, Defendants did not even "present[ Rubeor with] 'some semblance' of the evidence [against him]," which the Second Circuit has held "does not necessarily afford the accused an adequate opportunity to present her side of the story." Otero, 297 F.3d at 151. This failure made it virtually impossible for Rubeor to address Defendants' concerns and thereby provide "a meaningful hedge against erroneous action." Loudermill, 470 U.S. at 543 n.8; see also McDaniel v. Princeton City Sch. Dist. Bd. of Educ., 72 F. Supp. 2d 874, 880 (S.D. Ohio 1999) ("[D]ue process . . . requires that 'such descriptive explanation be afforded as to permit the employee to identify the conduct giving rise to the dismissal thereby enabling him to make a response.'" (quoting Helms v. Rafter, 853 F. Supp. 897, 903 (W.D.N.C. 1994))).

Defendants also failed to offer Rubeor any chance to give his side of the story before his termination. As just noted, Rubeor did not know Defendants were planning to replace him until he arrived at the December 10 meeting. Rubeor Decl. ¶ 16. And he arrived at that meeting after the Town Board had already taken the votes that sealed his fate. Rubeor Dep. at 57:20–58:5. "The essence of the opportunity to be heard is the 'opportunity to present reasons, either in person or in writing, why proposed action should not be taken.'" Wynder v. McMahon, No. 99-CV-772, 2013 WL 1759968, at *9 (E.D.N.Y. Apr. 24, 2013) (quoting Loudermill, 470 U.S. at 545). If the action in question has already been taken without any notice to the employee, as was the case when Rubeor arrived at the December 10 meeting, there has been no "opportunity to be heard at a meaningful time and in a meaningful manner." Mathews, 424 U.S. at 332. The

26

Town notes that Ruboer failed to "voice any concerns at [the Town Board] meeting[s] after learning the Town had voted to withdraw from the CAP." Town Reply at 5; see also Town Mem. at 12 ("In fact, [Rubeor] did not even speak out at the December 10, 2012 Town Board meeting when Bill Goblet told him his services would no longer be needed."). But that is irrelevant because the withdrawal and the authorization to appoint his replacement were voted on and passed before he even got to the meeting. Any concerns voiced by Rubeor would have been directed at decisions that Defendants had already made. Thus, because Defendants provided Rubeor with practically none of the procedural protections to which he was constitutionally entitled, a reasonable jury would have to conclude that they violated his right to procedural due process when they fired him at the December 10 meeting.[8]

The Town advances several reasons for dismissing Rubeor's procedural due process claim. None of them are persuasive. First, the Town argues that Rubeor "cannot maintain a § 1983 due process claim as he was afforded sufficient process during the Article 78 proceeding he commenced." Town Mem. at 11. Not so. As the Second Circuit has noted:

> Due process does not require a full, judicial-type hearing before employment is terminated, but certain features must be present to fulfill the minimum requirements of fairness: the employee must be given oral or written notice of the charges against him, an explanation

---

[8] Defendants also failed to comply with the process for removing assessors set out in New York Public Officers Law section 36. Under that statute, "[a]n application for . . . removal" of a public officer such as Rubeor "shall be made to the appellate division of the supreme court held within the judicial department embracing [the] town." Id. Further, "[s]uch application shall be made upon notice to such officer of not less than eight days, and a copy of the charges upon which the application will be made must be served with such notice." Id. The Court has identified at least one Appellate Division decision dismissing an application to remove an assessor because the petition failed to "set forth a single act of unscrupulous conduct or intentional wrongdoing, let alone evidence of any gross dereliction of duties or a pattern of misconduct." Salvador v. Ross, 876 N.Y.S.2d 754, 756 (App. Div. 2009).

> of the employer's evidence, and the opportunity to present his side of
> the story.

Todaro v. Norat, 112 F.3d 598, 599 (2d Cir. 1997) (citing Loudermill, 470 U.S. at 546). The

court in Todaro went on to say that "[a] post-termination proceeding such as that provided under

Article 78 does not meet the Loudermill requirements because it takes place *after* the employee

has lost his job." Id. at 599–600. That is precisely what happened here. Rubeor was terminated

without receiving any of the procedural protections mandated by Loudermill, so the availability

of an Article 78 proceeding does not defeat his procedural due process claim. See Gupta v. City

of Norwalk, No. 98-CV-2153, 2007 WL 988692, at *4 (D. Conn. Mar. 31, 2007) ("[A]

post-deprivation proceeding cannot remedy an initial failure to satisfy a requirement that there

have been a pre-deprivation hearing.").

According to the Town, Rubeor was not entitled to any pretermination process because

"the Town was not [Rubeor's] direct employer and . . . the Town merely opted-out of the CAP

(and took no direct employment action against [Rubeor])." Town Resp. at 5. It is true that Rubeor

was paid by Schoharie, and that his office was located there. Town SMF ¶¶ 7, 10; Rubeor

Responsive SMF ¶¶ 7, 10. But Rubeor was the Town's only assessor before he was fired, and the

Town gave Schoharie the portion of his salary that compensated him for his services to the

Town. Town SMF ¶ 8; Rubeor Responsive SMF ¶ 8. The Town cites no authority, and the Court

is aware of none, for the proposition that a tenured employee of one municipality is deprived of

all due process protections simply because another municipality is responsible for payroll as part

of an arrangement similar to the one between the three towns in this action. And it is simply not

the case that the Town was not Rubeor's "direct employer." Town Resp. at 5. To repeat, under

New York law, the Town could lawfully employ only one assessor. N.Y. Real Prop. Tax Law

§ 310(1). Rubeor was that person before his termination. That his services were shared with two

other towns as part of the CAP agreement does not change the fact that he served as the Town's

sole assessor before he was fired.

The Town also claims that Defendants did not have to give Rubeor any pretermination

process because his firing was a "random and unauthorized" act taken by Goblet, who allegedly

went "rogue." Town Reply at 5. The Town is correct that "postdeprivation remedies can provide

constitutionally sufficient process in circumstances where the deprivation was caused by a state

agent's conduct that was 'random' and 'unauthorized.'" New Windsor Volunteer Ambulance

Corps, Inc. v. Meyers, 442 F.3d 101, 115 (2d Cir. 2006) (quoting Zinermon, 494 U.S. at 130).

But the "random and unauthorized act" exception does not apply to cases in which the plaintiff

has a viable claim against the municipality that violated his constitutional rights. See Sullivan v.

Town of Salem, 805 F.2d 81, 86 (2d Cir. 1986) ("If the conduct of the building official either

established or was pursuant to town policy, [the 'random and unauthorized act'

exception] . . . [is] simply inapposite to this case."); Vaher v. Town of Orangetown, 916 F. Supp.

2d 404, 438 (S.D.N.Y. 2013) ("The ['random and unauthorized act'] doctrine is . . . inapplicable

to this case because Plaintiff alleges that Nulty was a high-ranking official and that it was the

official policy of the Town to deprive Plaintiff of his personal property without any post-seizure

process."); A.F.C. Enters. v. N.Y.C. Sch. Constr. Auth., No. 98-CV-4534, 1999 WL 1417210,

at *15 (E.D.N.Y. June 29, 1999) (finding the "random and unauthorized act" exception to be

inapplicable "because AFC sufficiently alleges a claim for municipal liability"). Put differently,

when a municipality itself takes action that makes it liable to a plaintiff, "its liability can never be

29

premised on the result of a random and unauthorized act." Wilson v. Civil Town of Clayton, 839 F.2d 375, 380 (7th Cir. 1988).

Since the applicability of this doctrine depends on whether Rubeor has established municipal liability, the Court turns to address that question. Suffice it to say for now that Rubeor has indeed established such liability, and that therefore the "random and unauthorized act" exception does not apply to this case.

### C. Municipal Liability

To establish municipal liability under § 1983, a plaintiff must plead and prove that the deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)). "The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, the plaintiff must establish a causal connection—an 'affirmative link'—between the policy and the deprivation of his constitutional rights." Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985). A plaintiff may demonstrate such an affirmative link by showing that the municipality, through its own deliberate conduct, was the "moving force" behind the alleged injury. Roe v. City of Waterbury, 42 F.3d 31, 37 (2d Cir. 2008).

A plaintiff may establish the existence of a municipal policy or custom by showing

> (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their

> subordinates, such that the policymakers exercised "deliberate
> indifference" to the rights of the plaintiff and others encountering
> those subordinates.

McLennan v. City of New York, 171 F. Supp. 3d 69, 94 (S.D.N.Y. 2016).

It is well established that "a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). Courts have accordingly held that a single resolution or law passed by the governing body of a municipality qualifies as a municipal policy. See, e.g., Owen v. City of Independence, 445 U.S. 622, 628–29, 657 (1980) (holding, in a case involving a city employee terminated via a city council resolution, that municipalities are not entitled to qualified immunity for constitutional violations); Bateson v. Geisse, 857 F.2d 1300, 1303 (9th Cir. 1988) (finding a municipal policy where "[t]he individual city council members comprising the City of Billings' 'properly constituted legislative body' made the single decision to withhold issuing Bateson's building permit"); Little v. City of North Miami, 805 F.2d 962, 967 (11th Cir. 1986) (holding that a municipal policy was established where "the act which allegedly infringed upon appellant's first amendment rights [was] the resolution adopted by a local governmental body—the City Council of North Miami"). Moreover, "[p]roof that an action taken or directed by the municipality or its authorized decisionmaker was unlawful necessarily establishes that the municipal action has been shown to be the moving force behind the injury of which the plaintiff complains." Joyce v. Town of Dennis, 705 F. Supp. 2d 74, 80 (D. Mass. 2010) (citing Bd. of Cty. Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403–05 (1997)).

31

Here, the record evidence permits only one conclusion: Rubeor's right to procedural due process was violated by a municipal policy. Under New York law, "the town board 'exercises both legislative and administrative powers, and it cannot and does not exist separately and independently from the town of which it is the governing body.'" Murer v. Butterfield, 472 N.Y.S.2d 539, 544 (Sup. Ct. 1984) (quoting Berean v. Town of Lloyd, 162 N.Y.S.2d 534, 537 (App. Div. 1957)); see also 25 N.Y. Jur. 2d Counties, Towns, and Municipal Corporations § 235 (2d ed. 2017) ("The town board is the general governing body of the town, and by express statutory authority it has all the powers conferred upon the town, and such additional powers as must necessarily be implied therefrom." (footnotes omitted)). On December 10, 2012, the Town Board passed resolutions that authorized withdrawal from the CAP agreement and the appointment of Rubeor's successor. Dec. 10 Meeting Minutes at 3. At the same meeting, Goblet told Rubeor that "the Board had voted and decided to remove the Town from the CAP so it will be one less town he has to worry about." Id. at 5. And about one week later, after the Town Board had named Rubeor's successor and formally withdrawn from the CAP agreement, Dec. 17 Meeting Minutes at 1, Goblet sent Rubeor a letter informing him that "the Town of Wright has decided to end its involvement with the CAP and [his] services are no longer needed. This decision was made at the last Town Board meeting and is effective December 10th based on Town of Wright, Local Law #1-2012," Dec. Letter. This letter only confirms what the December 10 Meeting Minutes make abundantly clear: the Town, acting through its governing body, voted to replace Rubeor and withdraw from the CAP agreement. If that does not qualify as a municipal policy that was the "moving force" behind a constitutional violation, it is hard to imagine what would. See Holscher v. Olson, No. 07-CV-3023, 2008 WL 2645484, at *12 (E.D. Wash. June 30,

2008) ("Here, the city council's decision was the 'moving force' because their defunding decision made Plaintiff's receipt of a meaningful <u>Loudermill</u> hearing futile . . . .").

The Town nevertheless argues that Rubeor "has not, and cannot, identify any policy, custom, or local law of the Town of Wright that violated his constitutional rights." Town Mem. at 7. According to the Town, "the only action taken by the Town of Wright was the December 10, 2012 Resolution electing to opt out of the CAP program." <u>Id.</u>[9] The Town suggests that Goblet, having gone rogue, took the "only actions directed at [Rubeor]" by "telling [him] he had 'one less town to worry about,' and [sending] the December 19, 2012 letter . . . informing him his services were no longer needed." <u>Id.</u> at 7–8. The Town's argument flies in the face of the undisputed record evidence. First, it is not true that the decision to withdraw from the CAP agreement was the only relevant action taken by the Town. In fact, the very next thing the Town Board voted on at the December 10 meeting was to "authorize the appointment of an interim assessor to be chosen by the board at a later date." Dec. 10 Meeting Minutes at 3. Since the Town could legally have only one assessor at a time, N.Y. Real Prop. Tax Law § 310(1), the only sensible interpretation of the decision to authorize the appointment of an interim assessor is that it meant Rubeor was finished.

The Town attaches significance to the fact that "none of the Town votes or resolutions were ever directed at Plaintiff; much less mention him by name." Town Mem. at 8. But whether the resolutions contained the word "Rubeor" or were "directed" at him is beside the point. What matters is the effect of the resolutions on Rubeor's employment as the Town's sole assessor.

---

[9] Notably, the Town appears to concede in its reply brief that the Town Board did in fact vote to appoint an interim assessor. Town Reply at 6.

33

Considered in that light, the decisions made by the Town Board at the December 10 and 17 meetings had the unmistakable effect of removing Rubeor from his position as assessor before the expiration of his six-year term. Defendants apparently admitted as much in one of their responses to Rubeor's interrogatories, in which they stated that "[u]pon information and belief, the end of [Rubeor's] assessment of property in the Town of Wright resulted from the votes of the Town of Wright Town Board on December 10, 2012." Dkt. No. 52-3 ("Interrogatories Part Two") at 10.[10]

The Town also errs in suggesting that it was Goblet alone who caused Rubeor's termination. Town Mem. at 7–8. Goblet did tell Rubeor that he had "one less town to worry about," but that was preceded by Goblet's explanation that "*the Board* had voted and decided to remove the Town from the CAP." Dec. 10 Meeting Minutes at 5 (emphasis added). Further, Goblet's letter to Rubeor does not show that Goblet "unilaterally terminate[d] [Rubeor's] responsibilities assessing properties in the Town of Wright." Town Reply at 5. Again, the letter says that "*the Town of Wright* has decided to end its involvement with the CAP and [Rubeor's] services are no longer needed. This decision was made at the last Town Board meeting and is effective December 10th." Dec. Letter (emphasis added). In light of the other record evidence, the only reasonable interpretation of this letter is that it confirmed a decision that had already

_____

[10]  According to Amber Bleau, a member of the Town Board when Rubeor lost his job, the Town Board never took "any action to fire Steven Rubeor, nor did the Board ever vote on any motion affecting Mr. Rubeor's Payment and/or salary." Dkt. No. 47-15 ("Bleau Affidavit") ¶ 7. But neither the Town nor Bleau explains how Defendants could have agreed to appoint an interim assessor without also firing Rubeor. As the Court has pointed out several times, New York law allows towns to have only one assessor. N.Y. Real Prop. Tax Law § 310(1). And, New York law aside, the Town has not pointed to any evidence in the record suggesting that Defendants intended to simultaneously employ two assessors.

been made by the Town Board, of which Goblet was a member. Thus, contrary to the Town, Goblet did not act alone; he voted with other members of the Town Board to unlawfully remove Rubeor from his position as assessor before the expiration of Rubeor's six-year term. That suffices to establish municipal liability.

**D.  Rubeor's Failure to Sue Goblet**

Finally, the Town argues that Rubeor's procedural due process claim fails because he did not sue Bill Goblet, "the only colorable Defendant [he] could have brought a suit against." Town Mem. at 5. The Town suggests that Goblet is the only proper defendant in this case because Rubeor "cannot establish that his rights were violated pursuant to any policy or custom of the Town of Wright (as distinguished from the actions of Mr. Goblet)." Town Reply at 2. This argument depends on the erroneous assumption that Rubeor cannot establish municipal liability against the Town and the Town Board. Since a reasonable jury must conclude that Rubeor has established municipal liability against the Town and the Town Board, his failure to sue Goblet is irrelevant to Defendants' liability. See Askins v. Doe No. 1, 727 F.3d 248, 253 (2d Cir. 2013) (holding that, in order to establish municipal liability, "the plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality" (collecting cases)). And in any event, suing Goblet would have done Rubeor little good, since there can be little doubt that, like the individual Town Board defendants, Goblet would have received qualified immunity for the actions he took in connection with Rubeor's termination. See Rubeor IV, 191 F. Supp. 3d at 207 ("[Rubeor]'s Complaint raised complicated and unresolved issues of state law—issues that clearly were not placed beyond debate by existing precedent—such that a reasonable official

35

could have believed that Defendants were not violating the law by removing Plaintiff from his office.").

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Town's motion for summary judgment (Dkt. No. 47) is **DENIED**; and it is further

**ORDERED**, that Rubeor's cross-motion for partial summary judgment (Dkt. No. 48) is **GRANTED**; and it is further

**ORDERED**, that the issue of the damages to which Rubeor is entitled is referred to U.S. Magistrate Judge Christian F. Hummel; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:      August 16, 2017
            Albany, New York



Lawrence E. Kahn
U.S. District Judge

36